IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

SHARITA L. BRANDON                                                                PLAINTIFF

V.                                       NO. 4:16CV00795 BRW/PSH

NANCY A. BERRYHILL,[1]
ACTING COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                                                   DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I. Introduction:**

Plaintiff, Sharita L. Brandon, applied for disability benefits and supplemental security income benefits on January 28, 2013, alleging a disability onset date of December 31, 2009. (Tr. at 14). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 30-31). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Brandon has requested judicial review.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

---

[1] Berryhill is now the Acting Commissioner of Social Security and is automatically substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

## II. The Commissioner's Decision:

The ALJ found that Ms. Brandon had not engaged in substantial gainful activity since the alleged onset date of December 31, 2009. (Tr. at 17). At Step Two, the ALJ found that Ms. Brandon has the following severe impairments: depression, personality disorder, and polysubstance abuse. *Id.*

The ALJ found that Ms. Brandon's impairments did not meet or equal a listed impairment. *Id.* Next, based on all of Ms. Brandon's impairments, including the substance use disorder, the ALJ determined that Ms. Brandon had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, except that: (1) she is limited to unskilled work; (2) she is able to understand, retain, and carry out simple instructions and make simple work-related decisions; (3) tasks must be learned and performed by rote, with few variables, and little judgment; (4) interpersonal contact may only be incidental to work performed; (5) supervision must be simple, direct, and concrete; (6) she must avoid hazards, such as machinery and unprotected heights; and (7) she cannot work without missing work or being late more than twice per month and she must be able to take frequent unscheduled breaks at will. (Tr. at 19).

The ALJ next found that Ms. Brandon had no past relevant work. (Tr. at 21). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on all of Ms. Brandon's impairments, including the substance use disorder, and considering Ms. Brandon's age, education, work experience and RFC, no jobs existed in significant numbers in the national economy that she could perform. *Id.*

However, pursuant to the Social Security Act, the ALJ next considered Ms. Brandon's claim if she were to stop using substances. 42 U.S.C. §§ 423(d)(2) and 1614(a)(3)(j). If she stopped using substances, she would continue to have a severe combination of impairments. (Tr. at 22). If

she stopped using substances, she would not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.* If she stopped using substances, her RFC would remain the same, except that she would not be late or miss work more than two times per month or need to take unscheduled breaks at will. *Id*. Considering the testimony of the VE and Ms. Brandon's age, education, work experience and RFC, the ALJ concluded that there were jobs in the national economy that she could perform, if she stopped using substances. (Tr. at 30). The ALJ found that the substance use disorder is a contributing factor to the determination of disability because Ms. Brandon would not be disabled if she stopped using substances. *Id.,* 20 CFR §§ 404.1520(g), 404.1535, 416.920(g), and 416.935. Therefore, the ALJ found that Ms. Brandon was not disabled. *Id*.

## III.  Discussion:

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B.  Ms. Brandon's Arguments on Appeal

Ms. Brandon argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that: 1) the ALJ erred in formulating Ms. Brandon's RFC; 2) the ALJ did not properly weigh the opinion of Dr. Nancy Toombs, Ed.D.; and 3) the ALJ erred in finding Crohn's disease was not a severe impairment. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

On April 18, 2013, Ms. Brandon filled out a function report for her claim. (Tr. at 23). She complained of bowel problems and unusual fatigue dating back to 1999. (Tr. at 24). She testified that she had been blacking out on occasion since she was 19 years old. (Tr. at 45-46). She also said that side effects from pain medicine made her slur her words and feel intoxicated. (Tr. at 46, 50). Ms. Brandon stated that she required two naps a day. (Tr. at 24). She noted she got along with others and could care for herself and do chores. *Id*. She had not seen a PCP in 10 years. (Tr. at 27).

On July 22, 2010, April 12, 2011, and July 9, 2011, Ms. Brandon complained of abdominal pain and diarrhea to doctors. (Tr. at 24). She reported a 25-pound weight loss. *Id.* Her x-rays were normal, and on April 12, 2011, her doctor noted she was able to stand up, talk on the phone, and walk back and sit down with no difficulty. (Tr. at 364). She did not exhibit signs of pain. (Tr. at 462). On July 1, 2012, Ms. Brandon claimed she had abdominal pain and weakness, which had

worsened over a six-month period. (Tr. at 25). An exam showed mild abdominal pain to palpation. *Id.*

Dr. Toombs, state-agency psychological consultant, examined Ms. Brandon on April 15, 2013. (Tr. at 386-391). At the exam, Ms. Brandon was unkempt, disorganized and rambling. (Tr. at 386). As a teenager, she spent three days in Living Hope psychiatric facility, and participated in a drug/mental health program in 2007. (Tr. at 387). She reported she had an extensive legal history and served time in federal prison for wire fraud. (Tr. at 19). Ms. Brandon admitted she had used marijuana for much of her life but quit in 2003. *Id*. She said she had lost 80 pounds, and was having digestive problems due to Crohn's disease.[2] (Tr. at 387). She said she was taking no medicine. *Id.*

Ms. Brandon's mood was tearful and depressed. (Tr. at 388-389). She showed a restricted range of expression. *Id*. Her speech was normal. *Id.* Her thought processes were logical and coherent. *Id*. She had no thought disorder and her memory was intact. *Id.*

Dr. Toombs observed that Ms. Brandon was having legal problems and had a hard time controlling aggression and living in a community. (Tr. at 389). She seemed overwhelmed and did not know how to use resources available to her. *Id*. Dr. Toombs noted no current use of drugs or alcohol. *Id.*

Dr. Toombs diagnosed major depressive disorder and personality disorder with antisocial features. (Tr. at 390). Ms. Brandon's ability to cope with mental and cognitive demands was poor and her situation would not likely improve without treatment. *Id*. She had not received any professional mental health treatment.[3] (Tr. at 18). Dr. Toombs found that Ms. Brandon could

---

[2] Based on Ms. Brandon's recorded weight at medical visits during the relevant period, she did not lose 80 pounds. (Tr. at 299, 304, 396, 407, 453).

[3] Ms. Brandon's mother tried to admit her to a psychiatric unit but was told she would have to

5

communicate and interact effectively, her concentration was fair, and her task persistence was good. (Tr. at 390). Dr. Toombs said Ms. Brandon could not complete tasks within an acceptable timeframe due to untreated depression. *Id.*

At a consultative physical examination, Dr. Bruce Randolph, M.D., diagnosed chronic abdominal pain (etiology unknown), unexplained weight loss, musculoskeletal pain, and mild limitations on physical functions. (Tr. at 399). A mental status exam was normal. *Id.*

Contrary to Ms. Brandon's assertion that she quit smoking marijuana in 2003 and did not otherwise use drugs, she tested positive on a drug screen for benzodiazepine metabolites, marijuana, and opiates. (Tr. at 474). On July 1, 2012, at an emergency room visit, she admitted to smoking marijuana. (Tr. at 376). She said that she smoked marijuana to increase her appetite. (Tr. at 395).

On July 21, 2014, Ms. Brandon told her doctor that she was refilling narcotics prescriptions early. (Tr. at 420). Her doctor told her she was in violation of her narcotics contract and that further violations would result in termination of treatment. *Id.* On May 2, 2015, when the doctor at the ER told Ms. Brandon that she was being discharged, she demanded narcotics and refused to leave, saying, "I will just come back today and get me some damn pain meds when another doctor is here." (Tr. at 463).

While Ms. Brandon claimed she suffered from stomach problems, and had passed out from pain, a physical exam on May 2, 2015 showed normal appearance and normal bowel sounds, with no distension or rigidity. (Tr. at 460). She did not appear to be in distress, was well-developed and

---

hire a lawyer to proceed with involuntary commitment, so Ms. Brandon did not enter treatment. (Tr. at 20).

well-nourished, and was sitting up in bed and cooperating. *Id*. Musculoskeletal and psychiatric exams were normal. (Tr. at 461).

Ms. Brandon first argues that the ALJ erred in her RFC determination because substance use disorder was not a contributing factor in her disability determination. She contends that she would have to miss work or take unscheduled breaks due *solely* to her mental health diagnoses and side effects from medication, and not because of substance use. The key factor in determining whether substance abuse is a contributing factor is whether a claimant would still be disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); 42 U.S.C. 423(d)(2)(C)("An individual is not considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.") It is the claimant's burden to prove substance abuse is not a contributing factor to disability. *Estes v. Barnhart*, 275 F.3d 722, 724-725 (8th Cir. 2002).

Ms. Brandon argues that Dr. Toombs's report showed that she suffered from functional mental impairments independent of drug or alcohol abuse. However, Dr. Toombs was not aware of Ms. Brandon's substance abuse: Ms. Brandon told Dr. Toombs that she was no longer using marijuana and Dr. Toombs found "no current use of drugs or alcohol" based on the interview. (Tr. at 389). But throughout the record, Ms. Brandon admitted to substance use and tested positive for controlled substances. The ALJ gave Dr. Topmbs's opinion "some weight" because it was consistent with some other evidence of record. But because Ms. Brandon was not forthcoming about her substance abuse, Dr. Toombs did not have a complete picture of Ms. Brandon's medical profile, and the ALJ considered this. Dr. Toombs attributed Ms. Brandon's tearful, unkempt, unorganized, and overwhelmed appearance to depression and personality disorder, while those

symptoms could reasonably be considered effects of substance use in this case (Tr. at 386-391).

The ALJ set forth two RFCs; the first considered Ms. Brandon's substance use, and the second removed substance use from the equation. The VE testified that there were no jobs available to Ms. Brandon using the first RFC, but she could work assuming she stopped using substances pursuant to the second RFC. There is evidence to support the ALJ's finding that substance use was a contributing factor to disability determination. *See Slater v. Barnhart*, 372 F.3d 956, 957 (8th Cir. 2004). The record reflects that Ms. Brandon engaged in drug-seeking behavior during the relevant period and was not truthful about drug use to her doctors. She tested positive for controlled substances. Ms. Brandon also complained of illnesses that were not borne out in medical examinations, evidencing a tendency to exaggerate. In *Slater*, in affirming the ALJ's decision to deny benefits, the Eighth Circuit found that drug and alcohol was a factor in the disability determination: "For example, the record is filled with evidence of drug abuse, alcohol abuse, and drug-seeking behavior, including lying and manipulating others to obtain prescription drugs, self-medicating and failing to follow recommended treatments, drinking six bottles of beer and a bottle of wine daily, and overdosing." *Id*.

As for the weight given to Dr. Toombs's opinion, the opinion was not entitled to controlling weight because: 1) she was not a treating physician, contrary to Ms. Brandon's statement that she was; and 2) she did not evaluate Ms. Brandon at a time when she was not using substances. When substance use is a factor, a medical opinion that does not consider such use is not entitled to controlling weight. *See Estes*, 275 F.3d at 725. In *Estes*, the medical provider "had not examined the claimant in a controlled setting where her use of alcohol was curtailed for an extended period of time, but primarily treated her during a period when she was consuming large quantities of

Nyquil and mouthwash." *Id*. Here, Dr. Toombs examined Ms. Brandon during a time when she was using substances, but Dr. Toombs did not know that.

Moreover, it is the ALJ's function to resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Where an opinion is only partially consistent with other evidence in the record, an ALJ may give significant weight to some aspects of the opinion while discounting portions of the opinion that are not supported. *Craig v. Apfel,* 212 F.32d 433, 436 (8th Cir. 2000). The ALJ afforded Dr. Toombs's opinion some weight and accounted for her assessment of mental functional limitations in the RFC by limiting Ms. Brandon to unskilled work. But the ALJ was right to consider the fact that Dr. Toombs's opinion did not factor substance use into her opinion. As well, Dr. Toombs found that Ms. Brandon could communicate and interact effectively, her concentration was fair, and her task persistence was good. (Tr. at 390). Based on this conclusion, the ALJ properly found that Ms. Brandon's mental impairments were not severe enough to be considered disabling.

Moreover, elsewhere in the record mental status exams were normal. Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). Ms. Brandon did not receive psychiatric treatment. When a claimant has not treated anxiety [for example], the ALJ is justified in ruling out anxiety as an impairment. *Smith v. Shalala,* 987 F.2d 1371, 1374 (8th Cir. 1993). Additionally, Ms. Brandon reported that she was fairly independent in her activities of daily living. Inconsistencies between subjective complaints and daily activities detract from a claimant's credibility. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). The ALJ properly weighed Dr. Toombs's opinion in conjunction with other evidence in the record.

Finally, Ms. Brandon argues that the ALJ should have considered Crohn's disease to be a severe impairment. The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). A physical or mental impairment must last or be expected to last not less than 12 months. *Karlix v. Barnhart,* 457 F.3d 742, 746 (8th Cir. 2006). If the impairment would have no more than a minimal effect on the claimant's ability to do work, then it does not satisfy the requirement of Step Two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).

While Ms. Brandon was diagnosed with Crohn's disease,[4] which is often accompanied by abdominal pain, she did not demonstrate symptoms of severe pain when in the examination room. (Tr. at 364, 462). Also, physical exams did not reveal abnormalities in her abdomen. (Tr. at 460). On Ms. Brandon's application for disability, she did not list Crohn's disease as an impairment. A claimant's allegations of a disabling impairment are undermined when she does not include the impairment on the application. *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995). And no doctor placed any functional restrictions on Ms. Brandon, as a result of Crohn's disease or any other alleged impairment. A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003). Finally, Ms. Brandon worked after her alleged onset date. An ability to work with an impairment shows that the impairment is not disabling. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). The

---

[4] Crohn's disease is a chronic inflammatory disorder that affects the digestive tract, characterized by cramping pain, diarrhea, and sometimes nausea or vomiting. *The Gale Encyclopedia of Medicine*, Ed. Laurie J. Fundukian, Vol. 3, 2011, p. 1222.

ALJ did not err at Step Two when she found that Crohn's disease was not a severe impairment.

## V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Ms. Brandon was not disabled. The ALJ adequately considered the effect of substance use disorder in her disability determination, she afforded proper weight to Dr. Toombs's opinion, and she did not err in her Step Two finding. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 29th day of September, 2017.

_____
UNITED STATES MAGISTRATE JUDGE